UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-00340-H

MARY ANGELA SCHWENDAU                                                                      PLAINTIFF

V.

GUARDSMARK, LLC                                                                                      DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Mary Angela Schwendau, brings hostile work environment and gender discrimination claims against her former employer, Guardsmark, LLC. Guardsmark has concurrently filed a motion to dismiss and a motion for summary judgment. For the following reasons, the Court will grant summary judgment in Guardsmark's favor.

**I.**

Plaintiff initially worked for Guardsmark, a security services firm, as a unit manager from May 2000 to September 2001. In March 2005, Guardsmark rehired Plaintiff as an account manager in its Louisville, Kentucky sub-office. There, she worked under the supervision of Joseph Taylor, Vice President and Manager in Charge of Kentucky.

Plaintiff asserts that Taylor engaged in multiple acts of sexual harassment beginning at the time she was rehired. Plaintiff alleges that Taylor made crude comments about her breasts and discussed performing sexual acts with members of her family. She also claims that throughout 2005 and 2006 Taylor lured her to private locations, including hotel rooms and offices, on the pretense of work. During these hotel and office visits, Plaintiff performed fellatio

on Taylor three times, fearing that if she did not comply with his demands she would be fired.[1]

In March 2007, Plaintiff accepted a promotion to Branch Manager and transferred to Guardsmark's Chicago offices. She maintained no contact with Taylor until April 2009 when she voluntarily transferred back to the Louisville sub-office. Upon Plaintiff's return, Taylor allegedly resumed his harassing comments, but no overt sexual activity occurred.

On May 10, 2010, Don Pettus, Guardsmark's Executive Regional Manager, terminated Plaintiff after it became known that she falsified company documents and created a conflict of interest by hiring her brother-in-law, Ronald Creak, as a security officer. Creak's employment application falsely stated that he held no familial relationship to any current Guardsmark employee. Plaintiff subsequently verified the application and affirmed that the information was correct. She then promoted Creak to a supervisor position within approximately two months of his original hiring.

Taylor attended Plaintiff's termination meeting, but he did not participate in making the decision. Following the meeting, Taylor escorted Plaintiff back to her office to collect her belongings. While in her office, Plaintiff threatened that if Guardsmark opposed her unemployment benefits she would file a sexual harassment complaint. This threat constituted Plaintiff's first allegation of sexual harassment, which Taylor immediately reported to Pettus and Donna Smith, Section Controller and Sexual Harassment Policy Compliance Officer ("Compliance Officer").

Plaintiff was aware that Guardsmark maintained a sexual harassment policy throughout

---

[1] Plaintiff's claims stemming from conduct that occurred prior to January 24, 2006 are time-barred by the five-year statute of limitations. KRS 413.120(2); *see Ky. Comm'n on Human Rights v. City of Owensboro*, 750 S.W.2d 422, 423 (Ky. 1988). It is unnecessary to provide a detailed discussion of this issue as all pending claims will be resolved through an affirmative defense.

the entire duration of her employment. In fact, as a Branch Manager, Plaintiff held a duty to promote and ensure compliance with that policy. The policy requires any employee who witnesses harassment or discrimination to immediately report the incident to their Manager in Charge and the Compliance Officer.

Plaintiff was also familiar with Guardsmark's mechanisms for filing complaints. On June 5, 2009, she sent Pettus and Smith an email regarding what she perceived as Taylor's mismanagement of the Kentucky offices. Her message discussed Taylor's incompetence and his failure to hire an administrative assistant, however, it never mentioned sexual harassment. Ten days later, on June 15, 2009, Plaintiff elaborated on her mismanagement allegations in a follow-up email to Smith. Again, she neglected to alert Smith to any sexual harassment.

Considering the threat as a potential complaint, Guardsmark launched an investigation and contacted Plaintiff several times to obtain additional information. Plaintiff refused to participate in the investigation.

Instead, on January 24, 2011, Plaintiff filed these hostile work environment and gender discrimination claims. Plaintiff has stipulated the voluntary dismissal of her gender discrimination claim. Therefore, the following summary judgment analysis will only discuss her hostile work environment claim.

## II.

The Court may properly grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the

motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The moving party bears the initial burden of explaining the basis of its motion and demonstrating that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.

The Kentucky Civil Rights Act prohibits sex-based discrimination in the workplace.  KRS 344.040(1) and (2).  A sexual harassment claim brought under the Kentucky Civil Rights Act should be analyzed in the same manner as a claim under its federal counterpart, Title VII.  *Ammerman v. Bd. of Educ.*, 30 S.W.3d 793, 797-98 (Ky. 2000).

"A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999).  To advance a prima facie case, Plaintiff must show that "(1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and that (5) the employer is vicariously liable."  *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).

Guardsmark concedes that Plaintiff's claim satisfies the first and third prongs of this test.  The second and fourth prongs remain mired in factual dispute, but for the purposes of summary judgment, the Court will assume that the sexual harassment was unwelcome and resulted in a hostile work environment.   Therefore, Defendant's vicarious liability under the fifth prong is the dispositive issue.

**IV.**

Guardsmark is presumed to be "subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). However, *Faragher* and *Ellerth* also set out an affirmative defense to such claims to encourage employers to take preventative and corrective measures against harassment. *Faragher*, 524 U.S. at 807-08. Where the supervisor's sexual harassment does not result in a negative tangible employment action, the employer may avoid liability and damages by establishing two necessary elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

Plaintiff's termination would constitute a tangible employment action. However, Plaintiff does not make much of an argument that it bore any relationship to the alleged sexual harassment. Plaintiff's falsification of documents and creation of a conflict of interest stood as a separate and legitimate reason for her firing. Furthermore, Guardsmark filed an affidavit stating that Taylor took no part in the termination decision, which Plaintiff does not challenge. *See Theus v. GlaxoSmithKline*, 452 F. App'x 596, 601 n.7 (6th Cir. 2011) (requiring that the harassing supervisor be involved in the adverse employment action before the affirmative defense is denied). Thus, Guardsmark is entitled to assert the affirmative defense.

**A.**

As for the first element, an employer can demonstrate reasonable care when it has promulgated and enforced an anti-harassment policy. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765; *Deters v. Rock-Tenn Co.*, 245 F. App'x 516, 525 (6th Cir. 2007). The policy must be both facially effective and effective in its practical implementation. *Clark*, 400 F.3d at 349. An effective anti-harassment policy "should at least: (1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provide for training regarding the policy." *Id.* at 349-50 (citations omitted).

Guardsmark's sexual harassment policy fulfilled the criteria for an effective policy. The policy contained a mandatory reporting requirement. It permitted employees to report incidents to Compliance Officers and provided their contact information. Though the policy stated that an employee should also inform the respective Manager in Charge, Plaintiff could easily avoid Taylor by speaking with the Compliance Officer. In fact, Plaintiff did bypass Taylor in her emails to Pettus and Smith discussing his alleged mismanagement.

Plaintiff received numerous copies of the policy and was trained in its application. Guardsmark provided copies of the policy at the start of her employment and throughout its duration. Moreover, Plaintiff's position as Branch Manager demanded that she train other employees in the policy's requirements.

Guardsmark's policy allowed both informal and formal complaints. Again, Plaintiff's own actions are instructive. She lodged an effective formal complaint against Taylor's mismanagement through email. Plaintiff also sparked an internal investigation when she informally threatened to file a sexual harassment complaint on the day of her termination.

In light of this evidence, the Court concludes that Guardsmark's anti-harassment policy was facially and practically effective. Thus, the firm used the necessary reasonable care to fulfill the first element of the affirmative defense.

**B.**

The second element of the defense is normally satisfied by showing that the employee failed to use the available complaint procedures. *Faragher*, 524 U.S. at 807-08; *Ellerth*, 524 U.S. at 765. Here, Plaintiff held extensive knowledge of the appropriate complaint procedures, but she never mentioned any sexual harassment until the day she was fired. This failure to report violated Guardsmark's sexual harassment policy and obstructed the firm's ability to prevent future discrimination. After discovering the allegations, Guardsmark swiftly investigated the claims, yet Plaintiff refused to participate.

Plaintiff justifies this behavior by arguing that she feared that reporting the harassment would result in retaliation. Even so, Plaintiff's subjective fears of confrontation, unpleasantness, or retaliation did not alleviate her duty to report the alleged hostile work environment to Guardsmark. *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 457 (6th Cir. 2008); *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir. 1999). Therefore, the Court finds that Plaintiff unreasonably failed to take advantage of her employer's preventative and corrective opportunities.

**C.**

Plaintiff does argue that Taylor's position as Vice President and Manager in Charge of Kentucky made him a proxy or alter ego of Guardsmark, precluding the affirmative defense. The *Faragher* and *Ellerth* affirmative defense is unavailable when the supervisor committing the

sexual harassment is the proxy or alter ego of the employer, such as a president, owner, proprietor, partner, or corporate officer. *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 52-53 (2d Cir. 2012); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 383-84 (5th Cir. 2003); *Johnson v. West*, 218 F.3d 725, 730 (7th Cir. 2000).

Taylor must report to regional and national corporate officers. He is not the alter ego of the employer by any standard. Therefore, his position cannot insulate him from the enforcement of company policy.

For the reasons stated in the Court's Memorandum Opinion and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED, and Plaintiff's claim is DISMISSED WITH PREJUDICE.

This is a final order.

cc:     Counsel of Record